UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                               :
RADMILA SHIMANOVA,                                             :
                                          Plaintiff,           :
                                                               :        15 Civ. 6250 (LGS)
                    -against-                                   :
                                                               :        **OPINION AND ORDER**
THERACARE OF NEW YORK, INC., et al.,                           :
                                                               :
                                         Defendants.  :
------------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/10/2017__
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Radmila Shimanova brings this action against Defendants TheraCare of New

York, Inc. ("TheraCare"), Mindi Messinger, John Calderon and George Vellios.  Plaintiff alleges

wrongful termination and employment discrimination based on her pregnancy in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), New York

State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL") and New York City

Human Rights Law, N.Y.C. Admin. Code § 8-197 et seq. ("NYCHRL").  Plaintiff further alleges

that Defendants interfered with and retaliated against her based on her exercise of rights under

the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").  Defendants move for

summary judgment on Plaintiff's claims.  For the reasons below, Defendants' motion is granted.

I.      BACKGROUND

The following facts are taken from the parties' statements pursuant to Local Civil Rule

56.1 and the parties' submissions on this motion.  For the purposes of this motion, all factual

disputes are resolved, and all reasonable inferences are drawn, in Plaintiff's favor.  *See Young v.*

*United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *Walsh v. N.Y. City Hous. Auth.*, 828

F.3d 70, 74 (2d Cir. 2016).

### A.      The Parties

Plaintiff Radmila Shimanova holds a master's degree in Education and Special Education in Early Childhood.  She was employed in various capacities by Defendant TheraCare from approximately October 2010 to December 2013.  TheraCare provides early intervention services under Article 25 of the N.Y.S. Public Health Law and special education services under Section 4410 of the N.Y.S. Education Law.  Defendant John Calderon has been TheraCare's Chief Executive Officer at all relevant times.  Defendant George Vellios began working at TheraCare in November 2003 and served as Vice President of Human Resources from November 2011 until August 2014.  Defendant Mindi Messinger was TheraCare's Director of Pre-School Operations from June 2013 to July 2015.

### B.      TheraCare

TheraCare employs or contracts with over 1,700 people in New York City and surrounding areas.  In addition to occupational therapists, physical therapists, speech therapists, special education teachers and others who provide services to clients, TheraCare has over 160 administrative staff.  During calendar years 2013 and 2014, approximately 92% of TheraCare employees were female.

TheraCare's policies include an FMLA policy and prohibitions against discrimination of any kind.  In calendar years 2013 and 2014, approximately 47 TheraCare employees applied for, qualified for and were granted FMLA leave.  Of these, approximately 43 returned to work without incident, and four voluntarily resigned when their leave expired.

### C.      Plaintiff's Employment

In October 2010, Plaintiff was working at TheraCare as a Special Education Teacher.  In that role, she provided special education services to four or five students per year.  Her job duties

included preparing and executing the curriculum, completing necessary paperwork and preparing reports.

In July 2011, Plaintiff requested and received FMLA leave for the birth of her child. She returned to work after her leave without incident.

In September 2012, Plaintiff was promoted to the position of Individualized Education Program ("IEP") Coordinator for TheraCare's Brooklyn Special Class Integrated Setting ("SCIS") classrooms.  Soon thereafter she was promoted again, to SCIS Coordinator.  As a SCIS Coordinator, Plaintiff managed the business aspects of TheraCare's SCIS Department and helped with the realignment of TheraCare's SCIS coordination process.

In April 2013, Plaintiff assumed the role of IEP Coordinator in the Bronx, where she was responsible for eight classrooms, eight teachers and eight assistant teachers.  Several weeks later, in early May 2013, she informed her supervisors and the HR department that she was pregnant and planned to return to work on a full-time basis at the conclusion of her FMLA leave.

### D.      Restructuring of Plaintiff's Department

Messinger was hired as the Director of Pre-School Operations in June 2013.  Messinger replaced Kathleen Flanders, who according to Plaintiff had been demoted from Director during her maternity leave, which commenced in June 2013 and concluded in September 2013. TheraCare management instructed Messinger to examine her department and recommend changes to make it run more efficiently.  Messinger supervised two IEP Coordinators -- Plaintiff and Lizeth Urueta.  After examining the IEP Coordinator position, Messinger determined that the position should be eliminated and its duties redistributed.

In August 2013, Messinger met with Plaintiff and Urueta individually to inform them of this restructuring.  Messinger told Urueta that she was out of a job because the IEP Coordinator

position was being eliminated and that TheraCare had an opening for a teacher position in one of

its Bronx classrooms.  Urueta immediately accepted the teacher position.  Messinger told

Plaintiff about the restructuring and said Messinger needed Plaintiff's skills in running the pre-

school program.  Messinger inquired whether Plaintiff would be interested in any of the new

positions Messinger was proposing, including Lead Teacher, Education Supervisor and Assistant

Director.  Messinger also mentioned a classroom teacher position but did not "stress[] that

[Plaintiff] should be applying for it."  Plaintiff replied to Messinger by email dated August 29,

2013, and said that she was interested in the Assistant Director position but not the classroom

teacher position because Plaintiff would consider that a demotion.

Plaintiff continued working for TheraCare until her child's birth in December 2013.  The

parties dispute what Messinger said Plaintiff's position would be during this time and following

her anticipated leave.  Plaintiff asserts that Messinger said Plaintiff would work as the Education

Supervisor for four SCIS classrooms in the Bronx until she went on maternity leave and would

be promoted to a more senior position when she returned.  Plaintiff further asserts that she did

the work of an Education Supervisor and even trained new Education Supervisors during this

time.  Messinger maintains that she told Plaintiff to apply for any vacant position at TheraCare

and that she assigned Plaintiff a temporary position doing special projects and training until she

took her leave of absence, assuming Plaintiff would apply for and accept a vacant position before

her leave commenced.

Of the new positions Messinger proposed, the Education Supervisor and Assistant

Director positions were approved for implementation by TheraCare management, but the Lead

Teacher position was not.  Plaintiff was informed of this non-approval.  The job description for

Education Supervisor, which Plaintiff helped draft, required a New York State certification in

School Administration and Supervision because Messinger wanted the Education Supervisor to perform field observations of teachers.  The job description for the Assistant Director position required a Licensed Clinical Social Worker certification.  Plaintiff did not possess either of these certifications.  The individuals ultimately hired for each position did possess the relevant certification.

### E.    Communications with Plaintiff Regarding Her Position and FMLA Leave

In a September 2013 meeting, Vellios reiterated that the IEP Coordinator position was being eliminated and encouraged Plaintiff to apply for FMLA leave and review the internal job postings in the meantime.  Vellios also told Plaintiff that if she did not want to remain at TheraCare "on this basis," he would arrange a severance package for her.  Vellios summarized the meeting in an email to Plaintiff dated September 24, 2013.

On at least two occasions in September 2013, Plaintiff sought information from Messinger about what her role would be after she returned from leave.  Messinger assured Plaintiff that she need not worry about her position after she returned and that Messinger was doing everything possible to get Plaintiff a better position than her current one.  Based on Messinger's assurances, Plaintiff opted to continue working during her pregnancy rather than taking leave immediately and trusted that she would have a position at TheraCare following her eventual leave.  Around this time, Messinger told Plaintiff at a meeting with the Education Supervisors that Plaintiff had to "keep that baby inside until Paula Mack [the new Education Supervisor Plaintiff was training] gets clearance to work."

Also in September 2013, Plaintiff requested a medical leave of absence pursuant to the FMLA.  Jennifer Reilly, a member of TheraCare's HR department, sent Plaintiff a letter

acknowledging receipt of her FMLA request and enclosing paperwork for Plaintiff to complete.

Plaintiff timely completed and returned the paperwork.

In October 2013, Patricia Cody, TheraCare's General Counsel, wrote to Plaintiff

regarding her current job and FMLA status.  By letter dated October 25, 2013, Cody

acknowledged that Plaintiff may have received "miscommunications" from TheraCare.  Cody

explained that Plaintiff would be eligible for FMLA leave if she applied for and accepted a

vacant position.  Cody also encouraged Plaintiff to apply for vacant positions and reminded her

that Messinger and Vellios had urged her to do so.  After Plaintiff responded to this letter by

questioning the positions promised by Messinger, Cody sent a letter dated November 1, 2013,

which again urged Plaintiff to apply for vacant positions and enclosed a printout of the job

listings from TheraCare's website.

Plaintiff did not apply for any vacant position at TheraCare after she was informed in

August 2013 that the IEP Coordinator position was being eliminated.  Between June and

December 2013, TheraCare posted 56 vacant positions on its intranet or the internet.  The

majority of these positions remained vacant into and throughout 2014.  During this time,

classroom teacher positions were always available.

By email dated December 4, 2013, Plaintiff informed TheraCare that her leave would

begin that day.  Reilly responded by reiterating Cody's statement that Plaintiff was not eligible

for leave because her position had been eliminated.  TheraCare terminated Plaintiff's

employment on December 5, 2013.

## II.    STANDARD

The standard for summary judgment is well established.  Summary judgment is

appropriate where the record before the court establishes that "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the

summary judgment motion and identifying those portions of the record that demonstrate the

absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir.

2016).  Courts must construe the evidence in the light most favorable to the non-moving party

and draw all reasonable inferences in the non-moving party's favor.  *See Young*, 135 S. Ct. at

1347; *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir.

2016).  "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 248; *accord

Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014).

## III.    DISCUSSION

Plaintiff asserts that she was improperly denied leave and was wrongfully terminated on

account of her pregnancy.  She brings claims for pregnancy discrimination under Title VII, the

NYSHRL and the NYCHRL, and for interference and retaliation under the FMLA.  For the

following reasons, summary judgment is granted for Defendants on all claims.

### A.    Discrimination Claims

#### 1.  Under Title VII and the NYSHRL

Plaintiff brings claims of wrongful termination under Title VII and the NYSHRL.

Defendants' motion for summary judgment on these claims is granted because Plaintiff has

failed to establish a prima facie case of pregnancy discrimination, and specifically has failed to

adduce evidence from which a reasonable jury could conclude that she was  terminated on

account of discriminatory intent regarding her pregnancy.

Under Title VII and the NYSHRL, discrimination on the basis of a woman's pregnancy is

discrimination on the basis of sex.  *Young*, 135 S. Ct. at 1343 ("The Pregnancy Discrimination

Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination

based on pregnancy."); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 63 (2d Cir. 1995) (noting that the

NYSHRL "provides the same sort of protection" regarding pregnancy discrimination as Title

VII).  At summary judgment, Plaintiff's claims alleging discrimination under Title VII and

NYSHRL are subject to the burden-shifting framework established by *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973).  *See Young*, 135 S. Ct. at 1353–54 (applying *McDonnell Douglas*

framework to Title VII pregnancy discrimination claim); *Walsh*, 828 F.3d at 74–75 (applying

*McDonnell Douglas* framework to NYSHRL sex-based discrimination claim).  Under this

framework, a plaintiff must establish a prima facie case of discrimination; if a prima facie case is

established, a defendant must proffer a legitimate and non-discriminatory reason for its actions;

finally, if the defendant offers such a reason, a plaintiff must show that the defendant's reason is

pretext for unlawful discrimination or retaliation.  *Young*, 135 S. Ct. at 1354.

To establish a prima facie case of discrimination, when the claim is based on a failure to

appoint or promote, a plaintiff must demonstrate that:  (1) she was within the protected class; (2)

she was qualified for the position; (3) she was subject to an adverse employment action; and (4)

the adverse action occurred under circumstances giving rise to an inference of discrimination.

*Walsh*, 828 F.3d at 75.  When the claim is based on wrongful termination the elements are the

same except that a plaintiff must prove as the second element that the plaintiff was performing

her duties satisfactorily.  *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).

"The burden of establishing a prima facie case is not onerous, and has been frequently described

as minimal."  *Walsh*, 828 F.3d at 75.

To the extent that the claim is based on the failure to assign Plaintiff to the Education

Supervisor position to commence after pregnancy leave, Plaintiff cannot make out a prima facie

case because the evidence does not show that she was qualified for the position or that

Defendants acted with discriminatory intent.  First, she did not apply for that (or any other)

position.  Second, she was not qualified for it.  The undisputed evidence shows that Education

Supervisor was a new position, that certification in School Administration and Supervision was a

requirement stated in the job description and that Plaintiff lacked this certification.

To the extent that the Title VII and NYSHRL claims are based on wrongful termination,

which is what the Complaint alleges, the record does not support an inference of discriminatory

intent, the fourth prong of a prima facie case.  Drawing all inferences in Plaintiff's favor, three

pieces of evidence could be relevant to Defendants' alleged discriminatory intent:  (1) the alleged

demotion of Flanders following her maternity leave; (2) the discrepancy in the messages

delivered to Plaintiff and Urueta when Messinger notified them that their position was being

eliminated; and (3) Messinger's "keep that baby inside" comment.  Even when viewed together,

this evidence does not support an "inference of discrimination."  *Walsh*, 828 F.3d at 75.

As to the first piece, evidence of discrimination against other employees may be relevant

to proving discrimination, *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)

(discussing relevance of similar wrongful acts evidence in an age discrimination case), but

Plaintiff has not offered any evidence beyond her own "understanding" that Flanders' change in

position was a demotion related to Flanders' maternity leave.  This evidence is not based on

personal knowledge, as required of affidavits in support or opposition to summary judgment, *see*

Fed. R. Civ. P. 56(c)(4), and provides no basis for determining "how closely related the evidence

is to the plaintiff's circumstances and theory of the case," *Sprint/United*, 552 U.S. at 388.  The

proffered evidence of Flanders' treatment therefore does not help Plaintiff raise an inference of

discrimination.

   The second piece of evidence -- the discrepancy in the messages delivered to Plaintiff and

Urueta -- fares no better.  According to Plaintiff, Defendants favored Urueta, who was not

pregnant, by forcing her to choose between a demotion to a teaching position and immediate

discharge, compared with Plaintiff whom they questioned about her interest in Messinger's

proposed new roles and who they continued in substantially the same role until she left to have

her child.  Plaintiff asserts that Defendants led her on about future opportunities because they

wanted her to facilitate the restructuring of her department but had no intention of hiring her for

any permanent position.  This argument has no support in the record beyond Plaintiff's affidavit

and is contradicted by the undisputed facts.  Plaintiff was encouraged to apply for, if not outright

offered, a teaching position as early as August 29, 2013.  On that date, Plaintiff responded to

Messinger that she was not interested in a teaching position because she considered it a

demotion.  Plaintiff never applied for any of TheraCare's vacant positions before her departure,

despite Defendants' repeatedly urging her to do so.  In light of the undisputed facts regarding

how Defendants treated Urueta and Plaintiff, Plaintiff's disparate treatment argument fails to

raise an inference of discrimination.

   Finally, Messinger's statement that Plaintiff had to "keep that baby inside" until one of

the new Education Supervisors was cleared to work is not sufficient to raise an inference of

discrimination.  Even construed in a light most favorable to Plaintiff, this statement is

"ambiguous and temporally removed from the termination, and shed[s] no light on whether the actual decision to discharge [Plaintiff] was motivated by any kind of discriminatory intent." *LaCoparra v. Pergament Home Centers, Inc.*, 982 F. Supp. 213, 225 (S.D.N.Y. 1997); *cf. Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 359 (S.D.N.Y. 2012) (finding that plaintiff established a prima facie case of pregnancy discrimination based in part on supervisor's comments about plaintiff's hormones and absences from work).

Messinger's statement is also insufficient to support Plaintiff's allegation of a hostile work environment prior to her termination.  To establish a hostile work environment under Title VII, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320–21 (2d Cir. 2015).  Messinger's statement was not severe in terms of its objective level of offensiveness or animus, and Plaintiff points to no other evidence of workplace hostility on account of her pregnancy.

Because Plaintiff has failed to establish a prima facie case of discrimination under Title VII or the NYSHRL, Defendants' motion for summary judgment on these claims is granted.

### 2.  Under NYCHRL

Defendants' motion for summary judgment is granted on Plaintiff's claim of wrongful termination under the NYCHRL because Plaintiff has failed to establish a prima facie case of discriminatory intent.  The NYCHRL was amended in 2005 to clarify that federal and state statutes "can serve only as a floor" for NYCHRL claims, and the NYCHRL "should 'be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (citation omitted).

In light of the 2005 revisions, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* at 75 (citation and internal quotation omitted).  Under the NYCHRL, "summary judgment is appropriate if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." *Id.* at 76 (citation and internal quotation omitted).

The NYCHRL prohibits "retaliat[ion] or discriminat[ion] in any manner against any person because [she] has . . . opposed any practice forbidden" as discriminatory under the NYCHRL.  N.Y.C. Admin. Code § 8-107(7).  A motion for summary judgment on an NYCHRL retaliation claim, like its state and federal counterparts, is analyzed under a burden-shifting framework.  The plaintiff must first establish a prima facie case, including evidence supporting an inference of discrimination, which the defendant may rebut by showing "legitimate reasons for its actions." *Ya-Chen Chen*, 805 F.3d at 75–76 (citing *Bennett v. Health Mgmt. Sys.*, 936 N.Y.S.2d 112, 124 (1st Dep't 2011)).  The plaintiff may then defeat the motion by showing that a reasonable jury could conclude "either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Id.* at 76 (citation and internal quotation omitted).

Even under the more lenient NYCHRL standard, Plaintiff has failed to put forward a prima facie case of discrimination.  As explained above, the evidence in the record fails to support an inference of discrimination.  Defendants' motion for summary judgment on Plaintiff's NYCHRL claim is granted.

**B.      FMLA Claims**

Plaintiff also brings a claim under the FMLA, alleging that Defendants "retaliat[ed] and interfer[ed] with Plaintiff's rights under the FMLA by explicitly revoking her leave and terminating her one day before her scheduled leave."  Because the Second Circuit recognizes distinct claims for interference and retaliation under the FMLA, *see Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016), each aspect of Plaintiff's FMLA claim is analyzed separately.

**1.  FMLA Interference**

Plaintiff's FMLA interference claim is dismissed because the undisputed evidence shows that she was not entitled to take leave under the FMLA.  To prevail on a claim of interference with her FMLA rights, a plaintiff must establish that:  (1) she is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave notice to the defendant of her intention to take leave; and (5) she was denied benefits to which she was entitled under the FMLA.  *Graziadio*, 817 F.3d at 424.

Plaintiff cannot establish the third element, that she was entitled to take FMLA leave. The FMLA regulations provide:

> (a) An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. For example:
>
> > (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the

13

> employee cease at the time the employee is laid off, provided the
> employer has no continuing obligations under a collective bargaining
> agreement or otherwise.

29 C.F.R. § 825.216.  Because the undisputed facts show that Plaintiff's position was eliminated, that she never applied for a new position with TheraCare, and that TheraCare terminated her employment on December 5, 2013, Plaintiff was not entitled to leave under the FMLA.  *See Lacey-Manarel v. Mothers Work, Inc.*, No. 01 Civ. 235, 2002 WL 506664, at *2 (S.D.N.Y. Mar. 29, 2002) (dismissing FMLA claim because "while plaintiff could not be lawfully terminated *because* she was on maternity leave, the fact of her leave did not entitle her to immunity from the personnel changes that were occurring at [her employer] as a result of its reorganization").  Defendants' motion for summary judgment on Plaintiff's FMLA interference claim is granted.

### 2.  FMLA Retaliation

Plaintiff's FMLA retaliation claim is dismissed because Plaintiff has failed to establish a prima facie case.  FMLA retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework described above.  *See Graziadio*, 817 F.3d at 429.  To make out a prima facie case of retaliation under the FMLA, a plaintiff must establish that:  (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Graziadio*, 817 F.3d at 429.

Plaintiff cannot establish the fourth prong of her prima facie case.  The record lacks evidence that could support an inference that Defendants terminated her with retaliatory intent.  TheraCare eliminated the IEP Coordinator position in August 2013, after Plaintiff informed TheraCare that she was pregnant but before Plaintiff took leave.  The elimination affected Urueta as well as Plaintiff and was part of a larger restructuring of their department.  There is no

evidence to suggest that Defendants made these changes to retaliate against Plaintiff for planning

to take FMLA leave.  Nor is there any evidence that Defendants view employees who take

FMLA leave negatively.  To the contrary, the undisputed facts show that approximately 47

TheraCare employees applied for, qualified for and were granted FMLA leave during 2013 and

2014, and that the vast majority of these employees returned to work without incident following

their leave.  Without any evidence to satisfy the fourth prong, Plaintiff cannot establish a prima

facie case of FMLA retaliation.  Defendants' motion for summary judgment on this claim is

granted.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants Theracare of New York, Inc., Mindi Messinger,

John Calderon and George Vellios' motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close the motion at Docket No. 47 and to

close this case.

Dated: March 10, 2017
       New York, New York


_____
       LORNA G. SCHOFIELD
     UNITED STATES DISTRICT JUDGE